Murry Warhank
JACKSON, MURDO & GRANT, P.C.
203 N. Ewing Street
Helena, MT  59601
Tel. (406) 442-1300
Fax: (406) 443-7033
mwarhank@jmgattorneys.com

*Attorneys for Jane Doe*

## UNITED STATES DISTRICT COURT
## FOR THE STATE OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| JANE DOE,<br><br>            Plaintiff,<br><br>vs.<br><br>HOPE CENTER MINISTRIES,<br><br>            Defendant. | Cause No.:<br><br>**COMPLAINT** |

Plaintiff Jane Doe, by and through attorneys Jackson, Murdo & Grant, P.C., and for cause of action against the Defendant, complains and alleges as follows:

### Jurisdiction and Venue

1. Jane Doe is the acronym for the survivor of sexual assault who brings this claim. Ms. Doe is known to the defendant. She is a resident of Lewis and Clark County. Previously, she lived in the Hope Center Ministries ("HCM") treatment facility in Jefferson County, Montana.

1

2. HCM is a company with its principal place of business in Oklahoma. Based on information and belief, Ms. Doe alleges it is organized in Oklahoma. For jurisdiction purposes, HCM is a resident of Oklahoma.

3. The amount in controversy in this matter exceeds $75,000.

4. Jurisidction is proper under 28 U.S.C. § 1332.

5. Venue is proper in this Court and division, as the acts or omissions at issue occurred in Jefferson County.

## Background and Facts

6. Ms. Doe was a long-term volunteer at HCM in its faith-based women's treatment program. After some work with those suffering from addiction issues, Ms. Doe decided to quit her good-paying job with the State of Montana to return to college to study addiction issues and become a Licensed Addiction Counselor.

7. HCM offered to let Ms. Doe live in its treatment center if she volunteered as a night manager. Ms. Doe informed HCM personnel that she suffers from a medical condition that causes seizures. During seizures, Ms. Doe can lose consciousness.

8. HCM treats women suffering from addiction issues. Residents are often facing legal trouble. They pose a threat to those serving HCM. Working

with residents such as this is an inherently dangerous activity. HCM recognized this risk and installed myriad surveillance cameras in its facility.

9. Ms. Doe developed friendly relationships with residents. On the evening of January 6, 2024, she was watching a movie with Resident #1, who is known to HCM.

10. Ms. Doe recalls knowing she needed to take her medicine. This is often the thought she has immediately before a seizure. She heard Resident #1 calling "Jess, Jess!" Resident #1 was at the opposite end of the bed from Ms. Doe. She sat up.

11. Ms. Doe had a seizure and lost consciousness. Her next memory is that she was on the right side of the bed. She was laying on Resident #1. Ms. Doe's body was shaking. She lost consciousness again. Her next memory is being on her back. Resident #1 was on her and kissing her with her tongue in Ms. Doe's mouth.

12. Ms. Doe's next memory is that her ankle was grabbed, likely by Resident #1. She was jerked down towards the middle of the bed.

13. Ms. Doe jolted back to consciousness and was aware her breasts were pushed out of her undergarment, toward the center. She was wearing a zip-up jacket, which was unzipped, but her camisole was still on. Resident #1 was

between Ms. Doe's leg, performing a sex act.  Ms. Doe is not aware if she lost consciousness but recalls Resident #1 swearing and making sexual remarks.

14. Ms. Doe was in shock.  She discussed the issue with the director of HCM and underplayed what had occurred.  Recent research indicates that up to 48% of sexual assault survivors do not disclose their assault.

15. Ms. Doe disclosed the true nature of the interaction to an employee of HCM.  That employee informed the director.  At the time the director was attempting to coach Ms. Doe into reporting a story that was untrue, but which would look better for HCM.

16. The director then threatened Ms. Doe with punitive or even legal action.  She indicated Ms. Doe could be sued for suffering the assault because it was her word against Resident #1.  In addition, she indicated that HCM's central office would investigate to determine whether they would punish Ms. Doe.

17. Ms. Doe has a family member who works with the undersigned counsel's firm.  She contacted the firm when HCM demanded a written statement to determine whether Ms. Doe would be punished.  Counsel attempted to contact HCM's director to informally discuss the status of HCM's investigation.

18. The Director, who had demanded that Ms. Doe meet with her within a short time frame, refused to meet with Ms. Doe.  HCM indicated that if she decided to have an attorney, Ms. Doe would be cut off from HCM and evicted

from her home. HCM followed through on that threat and evicted her, purportedly because of her medical condition.

19. At this time, Ms. Doe was working for Helena Valley Addiction Services as a Case Manager at HCM's facility. HCM's retributive actions caused her job to end, because all her clients were at HCM.

## **COUNT I – Negligence**

20. Ms. Doe incorporates by reference the other allegations in the complaint.

21. HCM owed a duty to its volunteers and tenants to act reasonably to protect them from risks posed by HCM clients.

22. HCM owed a duty to its volunteers and tenants to adequately staff the facility to ensure that they were protected from risks inherent in HCM's operations.

23. HCM owed a duty to its volunteers to enact rules for volunteers, tenants, and residents to protect them from risks inherent in HCM's operations.

24. HCM owed a duty to its volunteers and tenants to adequately train volunteers and tenants regarding the risks of its operations and appropriate techniques to mitigate those risks.

25. HCM breached these duties to Ms. Doe.

26. HCM's breaches have injured Ms. Doe.

27. Ms. Doe is entitled to damages from HCM.

## **COUNT II – Intentional or Negligent Infliction of Emotional Distress**

28. Ms. Doe incorporates by reference the other allegations in the complaint.

29. After HCM learned that Ms. Doe was sexually assaulted, it acted to silence and intimidate her, as discussed above. Ms. Doe has suffered extreme and intolerable emotional distress as a result.

30. As part of its campaign of intimidation, HCM indicated to Ms. Doe that she would be completely severed from any contact with the work that she gave up her career for if she wanted to have legal support. HCM then evicted Ms. Doe in retaliation for reporting her experience.

31. On information and belief, Ms. Doe alleges that HCM agents have spread false rumors that she had to leave HCM because she (a) was caught on video with her hand down a woman's pants, (b) was caught on video having sex, or (c) had a mental breakdown.

32. Ms. Doe has suffered extreme and intolerable emotional distress as a result of HCM's actions.

33. These actions comprise intentional and/or negligent emotional distress.

//

//

## **REQUEST FOR RELIEF**

Ms. Doe seeks the following:

1. Damages, exceeding $75,000;

2. Costs and fees;

3. A jury trial;

4. All other relief allowed at law.

DATED this 5th day of June 2024.

                                 JACKSON, MURDO & GRANT, P.C.

                                 _____
                                 Murry Warhank
                                 *Attorneys for Jane Doe*